IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RIZWAN HAFEEZ, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 06 C 6612 |
| ) | |
| RUTH DOROCHOFF, Acting Director, ) | Judge Ronald A. Guzmán |
| U.S. Citizenship and Immigration ) | |
| Services, Chicago Field Office, U.S. ) | |
| CITIZENSHIP AND IMMIGRATION ) | |
| SERVICES, and UNITED STATES ) | |
| IMMIGRATION AND CUSTOMS ) | |
| ENFORCEMENT, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Rizwan Hafeez has filed suit seeking, among other things, judicial review of defendants' denial of his wife's petitions to accord him immediate relative status under 8 U.S.C. § 1154. The government has filed a motion pursuant to Rules 12(b)(1) and (6) to dismiss the claims for judicial review asserted in Counts I-IV of the second amended complaint. For the reasons set forth below, the motion is denied.

### Background

Rizwan Hafeez is a citizen of Pakistan. (Second Am. Compl. ¶ 6.) He came to the United States in January 1995 as a student, and has been here ever since. (*Id.*)

In 1997, plaintiff married Denise Swinney, a U.S. citizen. (*Id.*) Plaintiff says he entered into that marriage in good faith, but separated from Swinney in 1999 because she had became addicted

to drugs and was engaging in criminal activity. (*Id.*) In 2001, plaintiff and Swinney were divorced. (*Id.*)

On July 6, 2001, plaintiff married his current wife, Rubina Hafeez, who is a U.S. citizen. (*Id.* ¶¶ 1, 6.)

On July 5, 2002, Rubina filed a Form I-130 Petition For Alien Relative seeking immediate relative status for plaintiff. (*Id.* ¶ 13.) Defendants never interviewed the Hafeezes with respect to the petition. (*Id.*)

On June 27, 2005, defendant U.S. Citizenship and immigration Services ("CIS") denied the petition saying: "The Service has deemed your spouse's first marriage to be fraudulent. Therefore, this makes the beneficiary ineligible for any future immigration benefits." (*Id.* ¶ 14.)

On September 29, 2005, Rubina filed a second Form I-130 Petition For Alien Relative seeking immediate relative status for plaintiff. (*Id.* ¶ 15.) Defendants scheduled an interview on the petition for May 30, 2006. (*Id.* ¶ 16.) At some point before the interview, however, defendants initiated removal proceedings against plaintiff for marriage fraud. (*Id.*) The removal proceedings are still pending. (*Id.*)

On July 14, 2006, CIS issued a notice of its intent to deny the second petition. (*Id.* ¶ 18.) The notice said that on January 31, 2000, Swinney had withdrawn an I-130 petition she had filed for plaintiff and told immigration investigators that her marriage to plaintiff was a sham. (*Id.*) The notice said that the evidence Rubina had submitted in support of her second petition was insufficient to overcome Swinney's admission. (*Id.*)

On May 30, 2007, CIS issued its final decision denying Rubina's second petition. (*Id.* ¶ 20.)

## Discussion

Defendants contend that various provisions of 8 U.S.C. § ("section") 1252 strip the Court of jurisdiction over plaintiff's claims.[1] First, it says that this suit is really an attack on "Hafeez' removal proceedings" not the denial of the immediate relative petition. (*See* Defs.' Reply at 5.) Thus, defendants argue, it is barred by section 1252(d)(1). *See id.* ("A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies . . . .").

The Court disagrees. Plaintiff alleges that defendants have initiated removal proceedings against him but not that an order of removal has been issued. (*See* Second Am. Compl. ¶ 16.) Because plaintiff is not challenging a removal order, this section of the statute does not apply.

Section 1252(g) bars the Court from "hear[ing] any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." *Id.* Because no removal order has been executed against plaintiff, the question becomes whether the claims in this suit "aris[e] from" the Attorney General's decision to commence such proceedings, or adjudicate a case, against plaintiff.

The statute does not define the phrase "arising from" and few courts have analyzed it in this context. The Fifth Circuit, however, has "delineated the outer boundaries" of the phrase and held

---

[1] A jurisdictional issue implicated by the pleadings but not raised by the government is standing. The actions plaintiff contests are related to petitions filed not by him, but by his wife, Rubina, who is not a party to this case. But, because plaintiff cannot have his immigration status adjusted unless one of her petitions is granted, *see* 8 U.S.C. § 1255(a), he has standing to pursue these claims. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (holding that plaintiff has Article III standing if he has suffered an actual injury that is traceable to the challenged conduct and is likely to be redressed by a decision in his favor).

3

that "claims with no more than a weak, remote, or tenuous connection to a 'decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders'" fall outside its scope. *Humphries v. Various Fed. U.S. I.N.S. Employees*, 164 F.3d 936, 943, 945 (5th Cir. 1999) (quoting section 1252(g)). According to the *Humphries* court, such claims include those arising from injuries that occurred before the Attorney General initiated removal proceedings. *Id.* at 944 ("[W]e would defy logic by holding that a claim for relief somehow 'aris[es] from' decisions and actions accomplished only after the injury allegedly occurred.").

The injury that spawned plaintiff's claims for judicial review is defendants' alleged reliance on false evidence to deny his first immediate relative petition. (*See* Second Am. Compl. ¶¶ 29-31.) That alleged injury occurred on June 27, 2005, nearly a year before defendants started removal proceedings against plaintiff. (*Id.* ¶¶ 14, 16, 29-31.) Because the injury from which his claims for judicial review stem occurred long before the Attorney General initiated removal proceedings, they do not "arise from" his decision to do so, within the meaning of section 1252(g).

The last part of the statute that defendants say strips the Court of jurisdiction over plaintiff's suit is 1252(a)(2)(B)(ii), which states:

> Notwithstanding any other provision of law . . . no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

*Id.* According to the Seventh Circuit, "the plain language of § 1252(a)(2)(B)(ii) bars courts from reviewing any discretionary decisions of the Attorney General made under the authority of sections 1151 through 1378 of Title 8 of the United States Code, which collectively constitute the subchapter that § 1252(b)(2)(B)(ii) references." *El-Khader v. Monica*, 366 F.3d 562, 566 (7th Cir. 2004)

4

(emphasis omitted). Plaintiff challenges the government's denial of his wife's petition to grant him immediate relative status under section 1154. Thus, the Court does not have jurisdiction over his suit under section 1252(b)(2)(B)(ii) if the government's decision on his petition was discretionary.

To determine whether section 1154 vests the government with discretion, the Court starts with the language of the statute. In relevant part, it provides:

> After an investigation of the facts in each case, ... the Attorney General *shall*, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative specified in section 1151(b) of this title ..., *approve the petition* and forward one copy thereof to the Department of State. ...
>
> ... *[N]o petition shall be approved* if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

8 U.S.C. § 1154(b), (c) (emphasis added). Plaintiff says the italicized words establish that the provisions are non-discretionary; that is, the government must approve a petition if the facts in it are true and cannot do so if the alien has attempted or committed marriage fraud. The government contends that, notwithstanding the mandatory language, the acts of approving or denying such petitions are acts of discretion, *i.e.*, the Attorney General approves the petition if he determines that the facts in the petition are true and denies it if he determines that the alien has committed marriage fraud.

The Seventh Circuit has not yet decided whether section 1154 decisions are discretionary, and the courts that have squarely addressed the issue have reached contrary conclusions. *Compare*

*Sabhari v. Frazier*, No. 06-196 ADM/RLE, 2007 WL295261, at *10-11 (D. Minn. Jan. 30, 2007) (holding that court had jurisdiction to review denial of a petition under section 1154(b) because that section uses "none of the discretionary language that typically implicates [the] jurisdictional bar" and "the sham marriage determination is not a matter of pure discretion because it is circumscribed by legal standards" and "requires some subjective weighing of the evidence" (quotation omitted)), *with Ayanbadejo v. Chertoff*, 462 F. Supp. 2d 736, 743-44 (S.D. Tex. 2006) (holding that Court lacked jurisdiction to review denial of petition under section 1154(b) because "[a]lthough the statute does not specifically state that the defendants have discretion to decide whether a marriage is bona fide or is, instead, a sham for the purpose of evading immigration laws, the enquiry unquestionably entails a fact intensive process that contemplates the exercise of discretion"). But, in *El-Khader v. Monica*, a case involving review of a decision to revoke a visa under section 1155, the Seventh Circuit said this:

> We next turn to the issue of whether the INS's decision to revoke a visa petition previously granted on behalf of El-Khader is a discretionary decision. According to § 1155, "[t]he Attorney General may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title." . . . [I]n our opinion, the discretionary nature of the decision is apparent from the plain language of the statute. . . .
>
> El-Khader argues . . . that the broad statutory language of § 1155 is limited by INS precedent establishing that revocation of a visa petition is only appropriate when the petition should not have been approved in the first place, which, he contends, is not a discretionary decision. Moreover, he notes that 8 U.S.C. § 1154(c) dictates that "no petition shall be approved if" the petitioning alien has previously committed a marriage fraud in an attempt to secure an immigration benefit. El-Khader argues that the INS's decision was not discretionary because the INS revoked his visa petition based on its finding that he committed a marriage fraud . . . . . El-Khader contends that this finding nullifies the INS's discretion because the INS is prohibited from issuing a visa petition to anyone who has committed a marriage fraud for immigration purposes.

6

> El-Khader's argument is misguided. It is true that the INS has regulations requiring that there must be "substantial and probative" evidence of marriage fraud to deny a petition on these grounds. Nevertheless, these regulations are inapplicable in those instances where the INS, acting under the authority of the Attorney General, chooses to exercise its discretion in revoking a visa under § 1155 after a petition for that visa has already been granted. Likewise, the fact that the INS is required to deny petitions to those who have committed marriage fraud for immigration purposes in no way limits the discretionary status of the Attorney General's subsequent revocation under § 1155 of a granted petition that, it turns out, should have never been made in the first instance....

366 F.3d 562, 567-58 (7th Cir. 2004) (emphasis and citations omitted). Though not controlling, *El-Khader* suggests that decisions to grant or deny visas under section 1154 are not discretionary. *See Holy Virgin Protection Cathedral of the Russian Orthodox Church Outside Russia v. Chertoff*, 499 F.3d 658, 661 (7th Cir. 2007) (saying that *El-Khader* had "contrasted the broad discretion conferred by § 1155 with the strict requirements in the agency's regulations for the initial issuance of a visa [under section 1154]").

As the *El-Khader* court noted, section 1154 decisions are governed by federal regulations. *See* 8 C.F.R. § 204.2. The mere existence of such regulations does not necessarily eliminate discretion. *See Holy Virgin Protection Cathedral*, 499 F.3d at 662 (rejecting the Ninth Circuit's view that "§ 1252(a)(2)(B)(ii) insulates from review [only] those 'matters of pure discretion rather than discretion guided by legal standards.'" (quoting *ANA Int'l Inc. v. Way*, 393 F.3d 886, 891 (9th Cir. 2004))). In this case, however, the regulations restrain the Attorney General's judgment to such a degree that his section 1154 decisions cannot be labeled discretionary.

In relevant part, the regulations provide:

(1) Eligibility. A United States citizen or alien admitted for lawful permanent residence may file [a section 1154] petition on behalf of a spouse.

7

(I) Marriage within five years of petitioner's obtaining lawful permanent resident status.

> (A) A visa petition filed on behalf of an alien by a lawful permanent resident spouse may not be approved if the marriage occurred within five years of the petitioner being accorded the status of lawful permanent resident based upon a prior marriage to a United States citizen or alien lawfully admitted for permanent residence, unless:
>
>> (1) The petitioner establishes by clear and convincing evidence that the marriage through which the petitioner gained permanent residence was not entered into for the purposes of evading the immigration laws; . . .
>
> (B) Documentation. The petitioner should submit documents which cover the period of the prior marriage. The types of documents which may establish that the prior marriage was not entered into for the purpose of evading the immigration laws include, but are not limited to:
>
>> (1) Documentation showing joint ownership of property;
>> (2) A lease showing joint tenancy of a common residence;
>> (3) Documentation showing commingling of financial resources;
>> (4) Birth certificate(s) of child(ren) born to the petitioner and prior spouse;
>> (5) Affidavits sworn to or affirmed by third parties having personal knowledge of the bona fides of the prior marital relationship. . . . ; or
>> (6) Any other documentation which is relevant to establish that the prior marriage was not entered into in order to evade the immigration laws of the United States.

8

> (C) The petitioner must establish by clear and convincing evidence that the prior marriage was not entered into for the purpose of evading the immigration laws. Failure to meet the "clear and convincing evidence" standard will result in the denial of the petition. . . .
>
> (ii) . . . The director will deny a petition for immigrant visa classification filed on behalf of any alien for whom there is substantial and probative evidence of . . . an attempt or conspiracy [to commit marriage fraud], regardless of whether that alien received a benefit through the attempt or conspiracy. . . .

8 C.F.R. § 204.2(a). Thus, the regulations dictate the kinds of evidence the Attorney General may consider to determine whether a marriage was fraudulent, set the applicable standard of proof, and, like the statute, prescribe the action the Attorney General must take if that standard is not met.

Nonetheless, the government says that section 1154 decisions are discretionary because the Attorney General's action is conditioned on his resolution of the facts, an inherently discretionary activity. *See* 8 U.S.C. § 1154(b), (c) (requiring Attorney General to approve petition "if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative specified in section 1151(b)" and deny the petition if he "determine[s] that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws"). But there is a difference between finding facts and exercising discretion. *Cf. Noble v. Keisler*, No. 05-3915-AG, 2007 WL 2828162, at *6 (2d Cir. Oct. 2, 2007) (stating that discretionary determination on a petition for waiver of inadmissibility requires a review of facts, but that review "does not convert [the] discretionary determination as to whether a petitioner warrants an adjustment of status into . . . factfinding" (quotation omitted)). Section 1154 instructs the Attorney General to do the former, *i.e.*, to determine whether there is "clear and convincing

9

evidence that the marriage through which the petitioner gained permanent residence was not entered into for the purposes of evading the immigration laws." 8 U.S.C. § 1154(b). Once he has determined those facts, however, the statute dictates his action: he "shall" approve the petition, if he determines that the facts in the petition are true, and he "shall [not] approve[]" it if he determines that the alien has attempted or committed marriage fraud. *Id.* § 1154(b), (c). Because the statute authorizes the Attorney General to find facts, not exercise discretion, the Court holds that section 1252(a)(2)(B)(ii) does not strip it of jurisdiction over plaintiff's suit.[2]

Alternatively, the government argues that the Court lacks jurisdiction over plaintiff's APA claim because that statute mandates exhaustion of remedies. Exhaustion of remedies is a jurisdictional prerequisite to an APA claim only if a statute or agency rule makes exhaustion mandatory. *Darby v. Cisneros*, 509 U.S. 137, 144-45 (1993) ("Whether courts are free to impose an exhaustion requirement as a matter of judicial discretion depends, at least in part, on whether Congress has provided otherwise, for of paramount importance to any exhaustion inquiry is congressional intent." (quotation omitted)). Neither section 1154 nor the regulations implementing it require plaintiff to exhaust administrative remedies before seeking review in federal court. *See id.*; 8 C.F.R. § 103.3(a)(1)(ii) ("Certain unfavorable decisions on applications, petitions, and other types of cases may be appealed"); *id.* § 204.2(a)(3) ("If the [section 1154] petition is denied, the

---

[2]The government also says the Court lacks jurisdiction because plaintiff's ultimate goal is an adjustment of his immigration status under section 1255, a decision this Court cannot review. *See* 8 U.S.C. § 1252(a)(2)(B)(I) ("Notwithstanding any other provision of law . . . , no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1255 of this title . . . ."). In his amended complaint, however, plaintiff challenges only the denial of his immediate relative petitions, not the denial of his petitions for an adjustment of status. Thus, section 1252(a)(2)(B)(I) does not apply.

10

petitioner will be notified of the reasons for the denial and of the right to appeal . . . ."); *id.* § 1003.3(a)(2) (stating that "[a] party affected by a decision of a Service officer . . . may . . . appeal[] to the Board"); *id.* § 1103.3(a)(1)(ii) ("Certain unfavorable decisions on applications, petitions, and other types of cases may be appealed."). Because the immigration statute and regulations do not mandate exhaustion of remedies for immediate relative petitions, exhaustion is not a precondition to the exercise of jurisdiction over plaintiff's APA claim. *Darby*, 509 U.S. 144-45.

Even if exhaustion is not a jurisdictional prerequisite, defendants say the Court should still require it as a prudential matter. *See Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006) (stating that if exhaustion is not required by Congress, and thus is a jurisdictional prerequisite, it is a matter of judicial discretion). The Supreme Court has said, however, that courts may not impose even a prudential exhaustion requirement on APA claims. *Darby*, 509 U.S. at 146 ("While federal courts may be free to apply, where appropriate, other prudential doctrines of judicial administration to limit the scope and timing of judicial review, [the APA], by its very terms, has limited the availability of the doctrine of exhaustion of administrative remedies to that which the statute or rule clearly mandates.")

That leaves plaintiff's constitutional claims. "Generally, an immigration plaintiff is required to . . . exhaust all administrative remedies before seeking relief in federal court because there are explicit statutory requirements in certain sections of the INA and a comprehensive administrative review scheme exists." *Iddir v. I.N.S.*, 301 F.3d 492, 498 (7th Cir. 2002). However, exhaustion is excused if, among other reasons, "the agency lacks the ability or competence to resolve the issue or grant the relief requested" or "substantial constitutional questions are raised." *Id.*

11

In Counts I, II, and IV plaintiff alleges that defendants violated his constitutional rights by denying the first petition on the strength of false evidence its investigators had procured because of their animus toward plaintiff's national origin and religion and/or his first wife's race. (Am. Compl. ¶¶ 28-29, 31.) These are constitutional claims that the Board of Immigration Appeals has no power to adjudicate. *See United States v. Gonzalez-Roque*, 301 F.3d 39, 47 (2d Cir. 2002). Thus, the exhaustion requirement does not apply.

## Conclusion

For the reasons set froth above, defendants' motion to dismiss [doc. no. 30] is denied.

**SO ORDERED.**  **ENTERED:** 11/30/07

HON. RONALD A. GUZMAN
**United States District Judge**